ted liability for $225,000 of the proposed deficiency.

In such circumstances the Commissioner of Internal Revenue was justified in making the assessment of the $225,000 and in satisfying it with plaintiff's remittance of that amount. As to that amount plaintiff waived the notice required by section 272(a) (1). Cf. Lehigh Portland Cement Co. v. United States, 30 F.Supp. 217, 90 Ct.Cl. 36.

■ It follows, therefore, that the October 10, 1947, assessment and the subsequent application thereto of the remittance of $225,000 were valid, and the April 3, 1950, refund claim as to that amount is barred by the two-year statute of limitations.

It is so ordered.

REED, Justice (Retired), sitting by designation, JONES, Chief Judge, and LARAMORE and MADDEN, Judges, concur.

**AUTOMATIC SCREW PRODUCTS COMPANY**

v.

**UNITED STATES.**

No. 397-57.

United States Court of Claims.

Feb. 11, 1959.

and by demanding in October an acknowledgment of plaintiff's insolvency before allowing plaintiff to sell certain machinery not utilized in performance of the contract. In order to be allowed to continue said sale, it is alleged one of petitioner's officers signed a statement "acknowledging insolvency." Plaintiff further alleges the United States, desiring to take possession of certain steel acquired by petitioner to perform the contract, terminated the contract "for the convenience of the Government" and replevied the steel. Plaintiff states the letter of termination of November 20, 1951, contained the following language:

> "By reason of the above and pursuant to condition 11—Default—of the subject contract, the government hereby terminates your right to deliver the undelivered balance of 129,-250 units. The said quantity of 129,250 units which you have failed to deliver will be procured in the open market against your account. and you will be held liable for any excess costs."

The phrase "By reason of the above," refers to the preceding paragraph of the letter of termination, reading as set out in note 2, paragraph 2.

Plaintiff alleges that its failure to complete the contract was "due to causes beyond [its] control and without the fault or negligence of the petitioner" and prays judgment for $62,702.13, lost in attempted performance and costs.

·The allegations of the preceding paragraph would, if true, bring the termination within the terms of the default clause of the contract, Article 11:

> "(a) The Government may, subject to' the provisions of paragraph (b) below, by written Notice of Default to the Contractor terminate the whole or any part of this contract in any one of the following circumstances:
>
> "(i) if the Contractor fails to make delivery of the supplies or to perform the services within the time

Charles C. Luetke, Minneapolis, Minn., for plaintiff.

Kathryn H. Baldwin, with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

REED, Justice (Retired), sitting by designation.

This ·is a suit by petitioner, Automatic Screw Products Company, who had a contract entered into June 18, 1951, to supply the United States certain army shells at a fixed price. Petitioner alleged the United States prevented performance of the contract by various failures to inspect plaintiff's product and practices

specified herein or any extension thereof;

\* \* \* \* \* \*

"(b) The Contractor shall not be liable for any excess costs if any failure to perform the contract arises out of causes beyond the control and without the fault or negligence of the Contractor. \* \* \*

\* \* \* \* \* \*

"(e) If, after notice of termination of this contract under the provisions of paragraph (a) of this clause, it is determined that the failure to perform this contract is due to causes beyond the control and without the fault or negligence of the Contractor·pursuant to the provisions of paragraph (b) of this clause, such Notice of Default shall be deemed to have been issued pursuant to the clause of this contract entitled "Termination for Convenience of the Government;" and the rights and obligations of the parties hereto shall in such event be governed by such clause." [1]

■ It is not necessary, however, to pass upon these allegations which are denied by the Government's answer for we conclude that the Government's motion for summary judgment on the ground that plaintiff did not exhaust its administrative remedies under the contract should be sustained. Under Article 12 of the contract—Disputes—this provision appears:

"Except as otherwise provided in this contract, any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Contracting Officer, who shall reduce his decision to writing and mail or otherwise furnish a copy thereof to the Contractor. Within 30 days from the date of receipt of such copy, the Contractor may appeal by mailing or otherwise furnishing to the Contracting Officer a written appeal addressed to the Secretary, and the decision of the Secretary or his duly authorized representative for the hearing of such appeals shall be final and conclusive: *Provided,* That if no such appeal is taken, the decision of the Contracting Officer shall be final and conclusive. \* \* \* "

On November 20, 1951, the Government terminated the contract by letter to the plaintiff, as set out below.[2] After a dispute over the Government's right to take possession of steel acquired by a Government advance, ending in a consent stipulation by plaintiff in a replevin action by the Government to secure the steel, the Government again computed finally the accounts under the contract between the plaintiff and itself, and notified the plaintiff on October 12, 1954, that it was indebted to the United States in the

---

1. Contract, paragraph 21, Termination for Convenience of Government, has detailed provisions to protect the contractor and the Government in the adjustment of accounts in the event of such an order by the Government.

2. "Your right to proceed further with the performance of subject contract is hereby terminated effective 20 November 1951.

"Subject contract, as amended, provided for the purchase of 130,000 Shell, HE M307A1, with an initial delivery of 20,000 in July of 1951. Investigation reveals that to date only a quantity of 750 acceptable units have been delivered to the Government and that you are delinquent in the delivery requirements under the said contract. Investigation further indicates that on or about 23 October 1951, you disposed of your facilities necessary for the continued manufacture of the required item, and that on said date you executed an instrument stating that you intended to cease operations in plant No. 1, located at 6716–18 W. Lake Street and plant No. 2, located at 1114 Ulysses Street, NE., and did not intend to produce any 57mm Shells under subject contract. The said statement was signed by A. P. Jeppesen, President, and E. G. Kunz, Vice-President of the Automatic Screw Products Company.

\* \* \* \* \*

"This Notice constitutes a findings of fact pursuant to the 'Disputes' article of your contract, from which you have a right of appeal as specified therein."

amount of $3,170.94. Demand was made for payment. This is the amount of the Government's counterclaim. The account was determined as a result of a claim letter from the plaintiff of September 28, 1954. This ruling of October 12, 1954, determined by the "Contracting Officer" as required by Article 12, stated it also was a finding of fact under the Disputes article of the contract. We think it was.

The interchange of letters attempting to settle accounts between plaintiff and defendant contained full statements of charges and credits and contradictory claims of balances due. No issue was then raised as to plaintiff's freedom from fault or negligence. Had such an issue been raised at the casting of accounts in the terms of plaintiff's allegations, its resolution would have concerned "a question of fact" under Article 12, Disputes, supra at note 1.[3]

Thereafter a notice of appeal to the Secretary of the Army was filed, notarized July 1, 1955. This was dismissed by order of November 26, 1956. The order contained this explanation:

"This Board has uniformly and consistently held that it is without authority to extend the period of time fixed by the contract terms, within which the appellant may appeal from decisions of contracting officers. The evidence discloses that appellant failed to appeal from the contracting officer's decision which was received by it on 15 October 1954 until more than 8 months thereafter, on 1 July 1955, whereas the contract terms unequivocally provided that an appeal be taken within 30 days."

There is nothing in the record to justify plaintiff's claim that negotiations between the parties extended its time to appeal.

 We hold that the contract provision for the settlement of disputes concerning facts is a valid provision for deciding these factual questions. It affords a prompt means for adjustment of factual disputes advantageous to both parties and is exclusive. United States v. Joseph A. Holpuch Co., 328 U.S. 234, 239, 66 S.Ct. 1000, 90 L.Ed. 1192. See also Stiers Bros. Construction Co. v. United States, 109 Ct.Cl. 353, 388; John J. Harte Co. v. United States, 97 F.Supp. 753, 117 Ct.Cl. 309. The later decision of the Supreme Court in United States v. Wunderlich, 342 U.S. 98, 72 S.Ct. 154, 96 L.Ed. 113, holding that only fraud, conscious wrongdoing, could justify reversal of the administrative determination has been modified legislatively to say:

"That any such decision shall be final and conclusive unless the same is fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence. 41 U.S.C. § 321."[4]

These later statutory exceptions to the finality of the administrative determination of the facts are not applicable to this case.

The same arguments apply to the counterclaim of the United States. The requisite findings were made by the Contracting Officer who found the United States was entitled to recover $3,170.94. No interest is demanded.

Defendant's motion for summary judgment is granted and the petition of plain-

---

3. Plaintiff's allegation was:
 "The petitioner was hampered and delayed in the performance of the contract by the United States of America in the following respects:
 "(1) By delay of the United States of America in inspecting pilot lots under this contract;
 "(2) By delay of the United States of

America in the inspection of shells in the plant of the petitioner;
 "(3) By delay of the United States of America in the inspection of gauges;
 "(4) By changing specifications under the above contract."

4. See H.R.Rep. No. 1380, 83d Cong., 2d Sess.; S.Rep. No. 32, 83d Cong., 1st Sess.

tiff will be dismissed. Judgment will be entered in favor of the United States on the counterclaim for $3,170.94.

It is so ordered.

JONES, Chief Judge, and LARA-MORE, MADDEN and WHITAKER, Judges, concur.