AMERICAN MARINE UPHOLSTERY
COMPANY
v.
The UNITED STATES.
No. 300–63.

United States Court of Claims
May 14, 1965.

Cecil D. Elfenbein, Dallas, Tex., for plaintiff.

Sheldon J. Wolfe, Washington, D. C., with whom was Asst. Atty. Gen. John W. Douglas, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

LARAMORE, Judge.

Plaintiff in this action contends (1) that defendant breached a supply contract in that proper procedures were not followed by defendant in terminating the contract for default, and (2) that it is entitled to payment for 60 undelivered chairs and for 300 chairs rejected as defective. Defendant has filed counterclaim for excess costs incurred in re-letting the terminated contract.

Plaintiff has filed motion for judgment on the pleadings and defendant has moved for summary judgment dismissing the petition and granting judgment for defendant on its counterclaim.

The facts as shown by the pleadings, affidavits and exhibits are as follows: On May 10, 1962, the General Services Administration issued a standard form document entitled "Invitation, Bid and Award," and therein invited bids for production and delivery f. o. b. destination of 2,452 straight chairs with arms. The Invitation specified that any bid offering a shipment time in excess of 75 calendar days after the notice of award would not be considered for award. Said standard form, among other things, advised that orders issued under this contract would show which office would make payments.

Plaintiff's offer to deliver the chairs within 75 days for the amount of $79,690 was accepted and the award of Contract No. GS–00S–38272 was made by and under the signature of George W. Grimsley, as contracting officer, on July 26, 1962. Plaintiff's unit price was $32.50, and that of the second lowest bidder, the Paoli Chair Company, of Paoli, Indiana, was $33.55.

On July 30, 1962, Purchase Order No. FNW–42021/CD9 was issued. Said order referenced Contract No. GS–00S–38272 and notified plaintiff that the delivery date was September 15, 1962 and that the San Francisco office of the General Services Administration would make the payments. The purchase order was amended August 28, 1962 pursuant to advice of plaintiff as to correct delivery date, changing the delivery date to October 25, 1962. The amendment stated:

"This amendment issued to conform to the delivery terms of the contract."

On September 27, 1962, plaintiff wrote the following letter:

"We wish to advise you of the status of the above contract.

"The subcontractor of wood parts for the frames has had production problems, and has been very late on all deliveries. He has not been able to meet his revised delivery schedule. We have finally received adequate frame parts to keep a continuous production line in operation.

"To offset this delay, we have started operating a night crew which will enable us to make a substantial delivery of chairs by the due date. However, it seems improbable that we can overcome enough of this lost time to have the contract completed by October 25, 1962.

"Mr. E. C. McDuff, the quality inspector of the contract, has been made aware of our parts problems, and we are keeping him up to date on all developments.

"In view of the above, we find it necessary to request a thirty (30) day time extension."

On October 9, 1962, defendant wrote to plaintiff as follows:

"In further reference to your letter of September 27, 1962, requesting an extension of delivery time on Purchase Order FNW–42021/CD9, you are advised that said request is denied for the present time.

"You are also put on notice that if satisfactory progress toward the completion of this contract is not evidenced by October 22, 1962 your right to proceed under said purchase order may be terminated, in which event purchase will be made from other sources and any excess cost occasioned thereby will be charged to your account.

"In this connection your attention is invited to paragraph 11 entitled 'Default' of the Standard Form 32 'General Provisions' of your contract."

On October 8, 1962, defendant's inspector inspected, accepted, and released for shipment 60 chairs subject to the delivery terms of the contract. However, there is nothing in the official files evidencing that plaintiff shipped the 60 chairs to the contractual destination, or submitted invoices or vouchers requesting payment, or appealed to the contracting officer for a decision on any matter relating thereto. As a matter of fact, plaintiff's plant manager stated that he did not wish to ship these 60 chairs because they were less than a carload shipment. Further, the evidence fails to show that plaintiff ever complied with provision 10 of the contract which required that plaintiff submit a completed GSA Form 1611 to defendant's transportation division, which form is an application for shipping instructions.

On October 22, 1962, in a letter addressed to Mr. Grimsley, contracting officer, and referencing the contract and purchase order numbers, plaintiff advised that various measures would be taken to correct the delay and the quality defects. Plaintiff stated that, besides the aforesaid 60 chairs which had been inspected and accepted, it had completed 296 chairs and had approximately 297 chairs in various stages of assembly. However, in a report dated October 24, 1962, defendant's quality control specialist concluded, after an inspection of plaintiff's plant, that (1) plaintiff could not deliver before February 1, 1963, (2) all chairs and many component parts inspected were found to be defective and unacceptable, and (3) the contract should be terminated.

Thereafter, on November 5, 1963, a letter signed by George W. Grimsley, Chief, Household Furnishings Section, National Buying Division, was sent to plaintiff. The letter read as follows:

"Further reference is made to my letter of October 9, 1962, in which your request for a 30-day extension of delivery time under Contract GS–00S–38272 (Purchase Order #FNW–42021/CD9) as contained in your letter of September 27, 1962, was denied. Also, at the same time, your firm was put on notice that if satisfactory progress toward the completion of the Contract and Purchase Order #FNW–42021/CD9 was not evidenced by October 22, 1962, your right to proceed under said Purchase Order might be terminated, in which event purchases would be made from other sources and any excess costs occasioned thereby would be charged to your account.

"It has been determined that the satisfactory progress referred to in my letter of October 9 has not been made. In view of the foregoing, you are hereby notified that without prejudice to other rights which the Government may have as a result of your breach of contract provisions, your right to proceed further with performance of Contract GS–00S–38272 is hereby terminated under the provisions of Article 11, subparagraph (A) (ii). As a result of this action, the Government reserves all rights and remedies provided under the Contract, in addition to the recovery of excess costs, provisions

for which are also contained in Article 11 of Standard Form 32, General Provisions (Supply Contract).

"Your rights of appeal to this decision, if such is considered desirable, are set forth in Article 12 (Disputes) of Standard Form 32, General Provisions (Supply Contract)."

Via a telegram dated November 7, 1962, defendant's chief inspector advised plaintiff that 300 chairs inspected on October 26, 1962 were rejected, and the reasons for rejection were forwarded to plaintiff on November 13, 1962. There is no evidence and the official files in this case do not reflect that, pursuant to the Disputes article of the contract, plaintiff appealed to the contracting officer to determine whether or not the aforesaid rejected 300 chairs conformed to the specifications.

On November 15, 1962, in a letter addressed to Mr. Grimsley, contracting officer, and referencing therein the numbers of the purchase orders and of the contract, plaintiff requested that it be advised as to the amount of the excess repurchasing costs that would be charged against it as a result of the termination action.

After soliciting bids from the companies which had unsuccessfully bid upon the original invitation for bids issued on May 10, 1962, defendant awarded relet Contract Number GS–00S–45040 to the low bidder, the Paoli Chair Company of Paoli, Indiana, on November 26, 1962. Pursuant to said contract and the purchase order issued thereunder, the relet contractor agreed to furnish the 2,452 straight chairs f. o. b. destination for a consideration of $81,896.80, and was ultimately paid, less two percent discount for prompt payment, a consideration of $80,258.86. Plaintiff was notified of the repurchase, and on December 17, 1962, a demand was made upon plaintiff to pay the excess relet costs. Plaintiff has not paid the excess repurchase cost to defendant.

Plaintiff appealed to the Board of Contract Appeals of the General Services Administration on December 3, 1962, requesting that the termination for default be changed to a termination for the convenience of the government. In its decision of May 2, 1963, the Board, denying plaintiff's appeal, noted that neither party had requested to be heard orally and that the dispute, apparently based on mere technicalities, was over the propriety of the termination action. It also observed that it was undisputed that the contract had not been performed. The Board determined that the letter of October 9, 1962 constituted a proper preliminary notice because:

"* * * Appellant's letter of September 27, 1962, to which the October 9 letter is a reply, sets forth clearly the Appellant's own announcement that performance was delayed, the nature and reason for the delay, and a request for time in which to complete the contract. Obviously, the Appellant was in the best position to know the reasons for failure of progress and means to cure such failure. By its own admission, Appellant was alarmed by its lack of progress and sought relief. Relief was denied and Appellant was notified by the Contracting Officer to take corrective action within a period in excess of ten (10) days. The Board finds that the preliminary notice called for by the Default clause was given."

The Board also found that the letter of November 5, 1962 was proper notice of termination. The Board stated:

"Appellant also takes the position that the notice of termination was not effective because it did not specify the nature of the failures in performing the contract. The notice of termination made reference to the Government's earlier warning of October 9, 1962, and stated that satisfactory progress in performance of the contract had not been made. It is undisputed that Appellant was

in default at the time of termination of the contract. The Board finds that the notice of termination was adequate and proper."

The Board found no merit in plaintiff's argument that neither of the aforesaid letters were proper notices in that they had not been executed by the contracting officer. As to this argument, the Board decided:

"* * * The Contracting Officer was George W. Grimsley, Chief, Household Furnishings Section, National Buying Division. This official executed both of the aforesaid documents using that title. The words 'Contracting Officer' were omitted. While the practice is desirable, failure to use the title of 'Contracting Officer' is not fatal. Moreover, the record indicates full well that Appellant was aware of the official position held by Mr. Grimsley in connection with the administration of this contract. For example, Appellant's letter of October 22, 1962, in which reconsideration for a time extension to the contract was requested and which set forth the production schedule, is addressed to Mr. Grimsley specifically as Contracting Officer. The same is true with respect to Appellant's letter of September 27, 1962, in which Appellant requests of Mr. Grimsley an extension of time."

Upon plaintiff's motion for reconsideration, on June 26, 1963, said Board reaffirmed its initial decision. As to the argument raised by plaintiff that the Board in its initial decision should have ordered the contracting officer to accept shipments of the above-mentioned 360 chairs, the Board stated that it did not have jurisdiction because plaintiff, contrary to the Disputes article of the contract, had not appealed to the contracting officer for a decision on this matter.

■ Under the above facts, plaintiff contends that the preliminary notice, the letter of October 9, 1962, was defective in that therein the contracting officer did not specify the particular failure for which he might terminate the contract if plaintiff failed to cure such failure. We cannot agree. The letter from plaintiff to the contracting officer dated September 27, 1962, set forth its production problems and asked for a 30-day time extension. Defendant replied in a letter dated October 9, 1962, denying the requested time extension. The letter went on to state that "* * * if satisfactory *progress toward completion* * * * is not evidenced by October 22, 1962, your right to proceed * * * may be terminated * * *." (Emphasis supplied) The letter then made reference to paragraph 11 entitled "Default" of the Standard Form 32 "General Provisions" of the contract. Plaintiff knew that by October 8 it had produced for inspection only 60 chairs. Plaintiff further knew that the completion date for the 2,452 chairs was October 25, which was a mere 17 days hence, and that it had used approximately 58 days to completely produce a mere 60 chairs. What more is necessary to put the contractor on notice that the contract would be terminated under the Default clause of the contract? Under the circumstances, we think plaintiff had sufficient notice so that it cannot now say that the government did not properly terminate. Consequently, the finding of the Board of Appeals is neither arbitrary nor capricious in this connection, and in all respects is proper and conclusive. Thus, we cannot say that the defendant in these circumstances breached the contract.

■ Plaintiff's next contention is that the preliminary notice was defective in that it did not set forth the contract number as required by 41 C.F.R. 53.501–5. The short answer to this contention is that the preliminary notice referred to plaintiff's letter of September 27 which had referred to both the contract number and the purchase order number. Therefore, plaintiff must have been aware that the contracting officer was referring to the contract in question.

■ Plaintiff next argues that the termination notice of November 5, 1962

was defective in that it was not signed by an officer using the title of "contracting officer." The notice was signed "George W. Grimsley, Chief, Household Furnishings Section, National Buying Division." However, George Grimsley did sign the contract, employing the title "contracting officer" and plaintiff must have known that the George Grimsley who signed the termination notice was the contracting officer. Furthermore, plaintiff had addressed letters dated September 27 and October 22, 1962, wherein it addressed Mr. Grimsley as the contracting officer. Therefore, we hold that the Board of Appeals was correct when it held that "while the practice [using the title contracting officer] is desirable, failure to use the title is not fatal."

■ Thus, it must be said that the Board of Contract Appeals' decision on all factual matters above outlined was reasonable and based upon substantial evidence and is accorded finality. Automatic Screw Products Company v. United States, 169 F.Supp. 951, 145 Ct.Cl. 94 (1959).

■ On the other hand, if the plaintiff claims that the matters decided by the Board involve questions of law, we accept such determinations inasmuch as the facts clearly indicate no other interpretation could be made.. Rumley et al. v. United States, 285 F.2d 773, 152 Ct.Cl. 166 (1961).

■ We next consider plaintiff's claim that it is entitled to payment for the 60 undelivered chairs. Articles 7 and 11 of the contract provided that upon acceptance and *delivery,* payment for the chairs would be made at the contract price upon the submission of proper invoices and vouchers. As stated earlier, the chairs were never delivered nor is there any evidence that the plaintiff ever submitted invoices or vouchers. Further, if as plaintiff contends in its motion, defendant refused to issue shipping instructions for the 60 chairs, this refusal would have been a matter that should have been appealed to the contracting officer pursuant to the Disputes article of the contract. Having failed to exhaust its administrative remedy, plaintiff's claim as to the 60 chairs is barred. United States v. Blair, 321 U.S. 730, 64 S.Ct. 820, 88 L.Ed. 1039 (1944); United States v. Joseph A. Holpuch Co., 328 U.S. 234, 66 S.Ct. 1000, 90 L.Ed. 1192 (1946).

■ Respecting plaintiff's claim that it is entitled to payment for the 300 chairs rejected by defendant's inspector on November 7, 1962, this court has held that it is a question of fact whether or not material furnished under the contract complied with the specifications. Crystal Soap & Chemical Co., Inc. v. United States, 103 Ct.Cl. 166 (1945); P.L.S. Coat & Suit Corp. v. United States, 180 F.Supp. 400, 148 Ct.Cl. 296 (1960). Having failed to appeal this factual question to the contracting officer pursuant to the Disputes article, plaintiff failed to exhaust its administrative remedy and its claim is therefore barred. United States v. Blair, supra; United States v. Joseph A. Holpuch Co., supra.

*Defendant's Counterclaim*

■ By reason of plaintiff's default, defendant incurred excess costs in the amount of $568.86 in reletting the contract. Plaintiff's defense is that the defendant failed to mitigate these damages; i. e., that defendant should have competitively advertised the defaulted contract, seeking offers from both large and small business, rather than just obtaining bids from the original small business bidders. Plaintiff argues that had defendant invited bids from large business concerns, a lower repurchase price might have resulted.

This court has held that obtaining bids from the original bidders rather than competitively advertising the procurement is neither unreasonable nor illegal. Zoda v. United States, 180 F.Supp. 419, 148 Ct.Cl. 49 (1960). Furthermore, the contract provided that the government could procure, upon such terms and in such manner as the contracting officer deemed appropriate, supplies similar to

those terminated. Plaintiff agreed under the contract that it would be liable to the government for any excess costs for such similar supplies (Article 11, "Default", of the contract). Furthermore, plaintiff knew from reading the face-sheet of the invitation and of the contract itself that this was a total small business set-aside procurement. Section 2 [2] (a) of the Small Business Act of 1958, 72 Stat. 384, 15 U.S.C. § 631 (1958 Ed.), as amended by 75 Stat. 666, 667, 15 U.S.C. § 631 (Supp. IV), states in pertinent part:

> "* * * It is the declared policy of the Congress that the Government should aid, counsel, assist, and protect, insofar as is possible, the interests of small-business concerns in order to preserve free competitive enterprise, to insure that a fair proportion of the total purchases and contracts or subcontracts for property and services for the Government (including but not limited to contracts or subcontracts for maintenance, repair, and construction) be placed with small-business enterprises, to insure that a fair proportion of the total sales of Government property be made to such enterprises, and to maintain and strengthen the over-all economy of the Nation."

Moreover, the Small Business Administration Regulation, 13 C.F.R. 127.15–2 (a) (3), and the Federal Procurement Regulation, 41 C.F.R. 1–1.706–5(b) (1963 Supp.) provided that invitations for bids and requests for proposals involving total small business set-asides should be restricted to small business concerns. Consequently, having sought to benefit as a small business under the aforesaid statute and regulations, we think plaintiff cannot now complain that only small business concerns were solicited to bid on the defaulted contract. Consequently, we hold that defendant is entitled to recover on its counterclaim.

In conclusion, plaintiff's motion for judgment on the pleadings is denied. De-fendant's motion for summary judgment is granted. Plaintiff's petition is dismissed, and judgment is entered for defendant on its counterclaim in the amount of $568.86.