**MORRISON–KNUDSEN COMPANY, Inc.,**
a Corporation

v.

**The UNITED STATES.**
No. 239–61.

United States Court of Claims.
May 14, 1965.

John W. Gaskins, Washington, D. C., for plaintiff. John A. McWhorter, Paul E. McNulty, and King & King, Washington, D. C., of counsel.

Irving Jaffe, Washington, D. C., with whom was Asst. Atty. Gen. John W. Douglas, for defendant. Thomas J. Lydon and Richard R. Molleur, Washington, D. C., were on the briefs.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

COWEN, Chief Judge.

This is a suit upon a contract entered into by plaintiff and the Alaska Road Commission of the Department of the Interior, for the grading and drainage of a section of the Richardson Highway, in the State (then Territory) of Alaska. The contract was signed in April 1953, and performance was completed in the spring of 1955, within the term of the contract as extended.

The contract was in the estimated total amount of $2,083,853, and payments were predicated upon the number of units of service or material actually employed by the contractor on the job. The following are taken from the contract schedule of pay items as illustrative:

| Item | Estimated Quantity | Pay names, with unit bid, price written in words | Unit Bid Price | Amount Bid |
|---|---|---|---|---|
| 26(1) | 742,000 | Cu. Yds. Unclassified Excavation for Borrow, at Seventy-three Cents per cu. yd. | 0.73 | 541,660.00 |
| 27(2) | 574,000 | Sta. Yds. Overhaul (1000' free haul), at Three Cents per sta. yd. | 0.03 | 17,220.00 |
| | | * * * | | |
| 100(1) | 175,000 | Cu. Yds. Selected Borrow Surface Course, at One and 20/100 Dollars per cu. yd. | 1.20 | 210,000.00 |

The contract incorporated by reference Specifications F.P.–41, which to some extent varied the standard Changed Conditions clause and to a lesser extent, the

standard Changes clause. The latter clause [1] for the purposes of this opinion is treated as if atypical.

The claims set forth in the petition include the following:

1. *A claim under the Changes or Changed Conditions clauses, arising as a result of the relocation of borrow pits.*

This claim is not before us at this stage of the proceedings.

2. *A claim for the increased cost of finishing the subgrade.*

In this claim, plaintiff seeks an equitable adjustment under the Changes clause or damages for breach of contract. The claim arises out of and is directly related to the deletion from the contract of pay item 100(1), which called for the placement on the subgrade of a 6-inch layer of selected borrow surface course composed of fine material. Plaintiff contends that defendant compelled it to use borrow material containing rocks over 6 inches in diameter (unsuitable for use in the subgrade) by refusing to authorize payment for the overhaul of suitable material from more remote borrow pits and at the same time required plaintiff to complete the subgrade to lines and grades without reasonable tolerances and in such a manner that the subgrade would accommodate traffic moving at the rate of 50 miles per hour. Plaintiff says that its unit costs were substantially increased as a result of the deletion and the additional requirements imposed upon it by defendant.

3. *Claim for increased costs resulting from the shutdown for the winter of 1954–1955.*

Plaintiff alleges that, as a result of the disorganization of its operations and the difficulties caused by the relocation of the borrow pits (claim 1), plus the additional work defendant required plaintiff to perform in the construction of the subgrade (claim 2), the completion of the contract was delayed into the year 1955 to plaintiff's damage.

All of plaintiff's claims in issue here were presented to the contracting officer, and after his adverse decision, were appealed to the Interior [Department] Board of Contract Appeals, hereinafter referred to as "IBCA". The IBCA considered claim (1) as IBCA–50, and claims (2) and (3) as IBCA–36. Both board actions were consolidated for hearing and a combined decision was issued on May 27, 1957. In its decision, the board made detailed findings of fact (in narrative form) and also made important and crucial interpretations of the contract provisions. Some relief was granted plaintiff on claims (1) and (2). Notwithstanding its holding that it had no jurisdiction of the claim for delay incident to the shutdown in the winter, the board also made factual findings on that claim. In an opinion dated March 23, 1959, the IBCA reviewed in detail its previous decision, considered new arguments, and denied the motion for reconsideration.

1. "Article 3. *Changes.*—The contracting officer may at any time, by a written order, and without notice to the sureties, make changes in the drawings and/or specifications of this contract and within the general scope thereof. If such changes cause an increase or decrease in the amount due under this contract, or in the time required for its performance, an equitable adjustment shall be made and the contract shall be modified in writing accordingly. No change involving an estimated increase or decrease of more than Five Hundred Dollars shall be ordered unless approved in writing by the head of the department or his duly authorized representative. Any claim for adjustment under this article must be asserted within 10 days from the date the change is ordered: *Provided, however,* That the contracting officer, if he determines that the facts justify such action, may receive and consider, and with the approval of the head of the department or his duly authorized representative, adjust any such claim asserted at any time prior to the date of final settlement of the contract. If the parties fail to agree upon the adjustment to be made the dispute shall be determined as provided in article 15 hereof. But nothing provided in this article shall excuse the contractor from proceeding with the prosecution of the work so changed."

During the course of pretrial proceedings in this court, the Trial Commissioner issued an order which provided in pertinent part. as follows:

"(2) Subject to further order of the court, the evidence hereafter considered in this case shall be limited to the administrative record, except evidence, material to the following issues:

"(a) An alleged breach of contract by the defendant in failing to authorize payment of overhaul involved in the use of 6 inch minus material in the top 12 inches of the subgrade, in deleting the selected borrow surface course, and in insisting that the subgrade be brought to a condition that would accommodate 50 mile-per-hour traffic, and the amount of damages due for any such alleged breach.

"(b) Increased costs of shutdown for the winter of 1954-55."

Defendant has asked us to review that portion of the Trial Commissioner's order which is quoted above.

The principal issue before us is raised in the review of paragraph 2(a) of the Commissioner's order. The contract appeals board made factual determinations on a claim as to which the board could have granted complete relief under the Changes clause of the contract. However, the predominant issue decided by the board was a question of law, e. g., the interpretation of the contract provisions. In these circumstances, is plaintiff entitled to a de novo trial on the board's factual determinations that are directly related to its decision on a question of law?

This question was reserved in the previous decisions of this court in WPC Enterprises, Incorporated v. United States, 163 Ct.Cl. 1, 323 F.2d 874 (1963), and Utah Construction Mining Co. v. United States, Ct.Cl., 339 F.2d 606, December 11, 1964, among others. In re-

solving the issue we are called upon to outline a judicial procedure which accords with the letter and spirit of the Wunderlich Act, 41 U.S.C. §§ 321, 322, and the decision of the Supreme Court in United States v. Carlo Bianchi & Co., Inc., 373 U.S. 709, 83 S.Ct. 1409, 10 L.Ed. 2d 652 (1963). We are mindful of the fact that there is no one solution of the problem and that it is impossible to announce a rule that can be applied uniformly and without exception in every case in which a related question may be presented. However, the situation now before us arises frequently, and we shall therefore undertake to state the procedure which should generally be followed in such cases in this court.

The terms "scope of trial" and "scope of review" have been used interchangeably and, although the two terms are related, it is essential to distinguish between them. The Wunderlich Act prescribes the scope of review on questions of fact in disputes that arise under the contract; it also sets forth the principles for review of issues of law. However, the act is silent on the scope of trial in the courts. In the Bianchi case, the Supreme Court has instructed us on at least one facet of the scope of trial, i. e., when an issue of fact has been administratively decided on a dispute arising under the contract and within the scope of the Disputes clause, a de novo trial may not be held on the facts thus determined. We believe that efficiency and economy dictate that a complete record be made before the administrative tribunal which, under the contract, is authorized to decide the particular dispute. As a practical matter, questions of law and fact cannot readily be segregated in preparing and presenting evidence at a hearing or trial. The disposition of claims, which the contract authorizes the appeals boards to decide, will be expedited if the parties make a complete record at a board hearing in order that the most appropriate action can be taken at that level. Where relief is available to the contractor under a provision of the contract (or phrased alternatively where the

dispute is within the jurisdiction of the administrative board), we deem it unwise to base the right to a trial de novo on the fact-law dichotomy for several reasons.

The distinction between factual and legal questions is fraught with many difficulties for the courts, as well as for the administrative boards. It is difficult enough to make the distinction upon the review of an entire record after trial; it is considerably more difficult to do so during the course of a hearing or trial or on the basis of the pleadings alone.

Although the Disputes clause covers "questions of fact", the boards of contract appeals have almost always considered questions of law. In most decisions which allow or reject a claim, it is necessary to resolve some issue of law. This is recognized in the board's charters, see 43 C.F.R. § 41.1; 32 C.F.R. § 30.1.

Since many claims involve mixed questions of law and fact, a complete hearing before the board on claims within its jurisdiction will tend to improve the quality of the record upon which it has to act and in the event the case comes before this court, the quality of the record which we must review under the standards set forth in the Wunderlich Act.

It is acknowledged by plaintiff that complete relief on this claim was available under the terms of the contract. The claim was so presented to and treated by the IBCA. Nevertheless, plaintiff now contends that it is a claim for breach of contract. In the broad sense, every failure by the government to comply with its contractual obligations is a breach of contract; this is the basis of our jurisdiction, 28 U.S.C. § 1491. In this context, a claim based on the inadequacy of an equitable adjustment would be a breach of contract. But we know that this is not so. United States v. Callahan Walker Construction Co., 317 U.S. 56, 63 S.Ct. 113, 87 L.Ed. 49 (1942). Most government contracts, either by clauses contained therein or by regulations which form a part of the contract, prescribe specific remedies for certain breaches of the contract by the government.[2] In such instances, the procedure specified in the Disputes clause must be followed while work is continued, lest the contractor be denied a remedy in this court for failure to pursue his administrative remedies. Therefore, where complete relief is available to the contractor under the provisions of the contract on a claim arising under the Disputes clause, the action is not one for such a breach of the contract that entitles either party to a de novo trial on the factual questions decided. We think the Supreme Court's decision in Bianchi compels the application of these rules even when the major issue to be decided is a question of law, as well as when the decision rests upon mixed questions of law and fact.

As previously stated, the claim involves questions of law relating to the interpretation of the contract. Bruno New York Industries Corp. v. United States, Ct.Cl., 342 F.2d 75, March 12, 1965. The board's decisions on such questions are not final, but they are not before us at this stage of the proceedings and we intimate no decision on them.

Defendant concedes and plaintiff agrees that the plaintiff's right to a de

**2.** It has often been argued that the failure to order the change and grant an equitable adjustment, when a change in fact has been required by the contracting officer, constitutes a breach of contract. In some instances, the boards have ordered the contracting officer to make an adjustment, treating the requirement of the contracting officer as a constructive change. See Noonan Constr. Co., 1963 B.C.A. 18282 (ASBCA 1963); Aero Service Corp., 58–1 B.C.A. 6355 (ASBCA 1958). This court has treated similar claims as a change or a changed condition and granted an equitable adjustment. Jack Stone Company v. United States, Ct.Cl., 344 F.2d 370, April 16, 1965; E. H. Sales, Inc. v. United States, 340 F.2d 358 (Ct.Cl.1965); Hoffman v. United States, Ct.Cl., 340 F.2d 645, May 15, 1964.

novo trial on the delay claim is governed by our decision in Utah Construction and Mining Co. v. United States, supra. Faced with the prospect of having their suits in court dismissed for failure to exhaust their administrative remedies, contractors often feel compelled to present all claims relating to the contract to the contracting officer, and on appeal to the appeals board. United States v. Blair, 321 U.S. 730, 64 S.Ct. 820, 88 L.Ed. 1039 (1944); United States v. Joseph A. Holpuch, 328 U.S. 234, 66 S.Ct. 1000, 90 L.Ed. 1192 (1946); Henry E. Wile Co. v. United States, 144 Ct.Cl. 394, 169 F.Supp. 249 (1959). In some instances, the boards recognize that they have no jurisdiction and take no action beyond noting that fact. In this case, the IBCA stated that it had no jurisdiction of plaintiff's claim for delay damages due to the winter shutdown. Therefore, the board's action in making findings of fact on that claim was gratuitous and such findings do not preclude or limit a trial de novo on the merits of the claim. The judges of the court are unanimously of this view.

We recognize that the facts which give rise to relief under the Disputes clause of the contract may often be related to facts which support a claim for damages that cannot be awarded under the terms of the contract. The problem inheres, to a large extent, in the contract documents. In the circumstances, our task is to make the best of a difficult situation.

■ Defendant's request for a review of the Trial Commissioner's order is granted to the extent that paragraph 2(a) of his order is set aside and the scope of the trial on the facts pertaining to plaintiff's claim for increased costs of finishing the subgrade is limited to a review of the administrative record under the standards prescribed by the Wunderlich Act. The case is remanded to the Trial Commissioner for further proceedings not inconsistent with this opinion.