**AIR–A–PLANE CORPORATION**

v.

**The UNITED STATES.**

No. 61–62.

United States Court of Claims.

March 14, 1969.

As Amended June 13, 1969.

David V. Anthony, Washington, D. C., for plaintiff, Gilbert A. Cuneo, Washington, D. C., attorney of record, Sellers, Conner & Cuneo and James R. Stoner, Washington, D. C., of counsel.

Douglas M. Smith, Civil Div., Dept. of Justice, Washington, D. C., with whom was Asst. Atty. Gen., William D. Ruckelshaus, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## OPINION

DAVIS, Judge.*

After formal advertising, plaintiff Air-A-Plane Corporation entered into a fixed-price contract with the Army Chemical Corps to make over 1100 smoke generators (designated as M3A1). The total price at the outset was $607,101.04. The current dispute is the outcome of a large number of changes made by the Government after the award. In its decision the Armed Forces Board of Contract Appeals said that "[w]hile aware of the 'Changes' provision in the contract and of the Government's right to order changes, [plaintiff] in bidding on the contract, had not anticipated that any substantial number of changes would be ordered. This belief was based principally on the fact that the contract, by way of detailed and comprehensive specifications and drawings, described the contract items minutely. This belief was apparently also based in part upon the fact that the contract was a fixed price contract."

Nevertheless, the Board found, "[a]fter the contract was awarded a large number of changes were made. The first change changed the designation

---

* Although we come to a more tentative result than he did, we have been helped by the opinion of Trial Commissioner C. Murray Bernhardt.

The necessary findings of fact are incorporated in this opinion.

of the item from the M3A1 to the M3A2. The Board here emphasizes that it was a large number of changes that were made. Since the parties count the changes differently they do not agree on the precise number ([plaintiff] uses a figure of approximately 1000) but using either party's version the number is large. So numerous were the changes that the contract took on the aspects of a design or development contract. Certain components of the generator were the subject of more than one change; and other components, although not themselves changed, would be affected (as to time of assembly for example) by changes made on other components. The frequency and nature of the changes were disruptive of [plaintiff's] production. By way of illustration as to the number of changes the first change deleted some 41 drawings in their entirety, making substitutions for most of them; and directed [plaintiff] to hold in abeyance the procurement of the materials and components covered by some 126 other drawings."

As compensation for these modifications, the contractor sought equitable adjustments under the Changes article. Certain supplemental agreements were made, one of which (No. 17) added some $25,000 to the total price. The parties could not agree on the recovery for other changes, and the contracting officer unilaterally allowed an additional $60,000, which was much less than plaintiff had asked. It appealed to the Board of Contract Appeals, arguing that Supplemental Agreement No. 17 should be set aside as induced by economic duress, and that the total equitable adjustment should be considerably enlarged over the $85,000 (or so) extra which had been granted.

The Board agreed that "There is no dispute as to the fact that changes were ordered. There is no dispute as to the fact that the over-all effect of these changes was to increase the cost of performing the contract. There is no dispute as to the fact that [plaintiff] is entitled to an upward adjustment of the contract price." The Board decided, however, that Supplemental Agreement No. 17 was not vitiated by duress and that Air-A-Plane had failed to prove that it was entitled to anything more, by way of equitable adjustments under the Changes article, than it had already been allowed by the contracting officer. Air-A-Plane Corp., ASBCA No. 3842, 60–1 BCA ¶ 2547, at 12,203.

The original petition in this court (filed in 1962) contented itself with attacking the Board's decision, on the amount of recovery, as vulnerable under the standards of the Wunderlich Act, 41 U.S.C. § 321 (1964). After United States v. Carlo Bianchi & Company, 373 U.S. 709, 83 S.Ct. 1409, 10 L.Ed.2d 652 (1963), plaintiff was allowed to amend the petition to assert, in addition, (a) that defendant breached the contract because the changes imposed amounted *in toto* to a cardinal change, beyond the scope of the Changes article, and (b) a plea for reformation of the contract because the parties intended, but never executed, a novation of the original contract, transforming it into a research, development, and production agreement.[1] Plaintiff continues to press these additional claims, and we consider them first because their disposition may make it unnecessary to review the Board's decision at all.

■ *Cardinal change:* The normal Changes article (which was the clause in this agreement) permits the Government to make changes "within the general scope of this contract." Because of this phrase in particular, and the structure of the article in general, the court has con-

---

1. Before the trial commissioner, plaintiff treated this latter claim as including one for misrepresentation by the Government that a contract which was really one for research and development was merely a fixed-price contract. The commissioner accepted this characterization, and the defendant does not assert before us that the misrepresentation cause of action is outside the amended petition. Accordingly, we accept the misrepresentation claim (as well as that for reformation) as properly before the court.

sistently ruled that such a "changes" provision does not authorize a "cardinal" change—a drastic modification beyond the scope of the contract.[2] Rather, a fundamental alteration of this type is a contract breach, entitling the contractor to breach damages.

■ The basic standard, as the court has put it, is whether the modified job "was essentially the same work as the parties bargained for when the contract was awarded. Plaintiff has no right to complain if the project it ultimately constructed was essentially the same as the one it contracted to construct." Conversely, there is a cardinal change if the ordered deviations "altered the nature of the thing to be constructed". Aragona Constr. Co. v. United States, *supra* note 2, 165 Ct.Cl. at 391; Keco Indus., Inc. v. United States, *supra* note 2, 364 F.2d at 847–848, 176 Ct.Cl. at 998; *see* Wunderlich Contracting Co. v. United States, *supra* note 2, 351 F.2d at 966, 173 Ct.Cl. at 194. Our opinions have cautioned that the problem "is a matter of degree varying from one contract to another" and can be resolved only "by considering the totality of the change and this requires recourse to its magnitude as well as its quality". Saddler v. United States, *supra* note 2, 287 F.2d at 413, 152 Ct.Cl. at 561, *see* J. D. Hedin Constr. Co. v. United States, *supra* note 2, 347 F.2d at 257, 171 Ct.Cl. at 105, 106. "There is no exact formula * * *. Each case must be analyzed on its own facts and in light of its own circumstances, giving just consideration to the magnitude and quality of the changes ordered and their cumulative effect upon the project as a whole."

Wunderlich Contracting Co. v. United States, *supra*, 351 F.2d at 966, 173 Ct.Cl. at 194. In emphasizing that there is no mechanical or arithmetical answer, we have repeated that "[t]he number of changes is, not, in and of itself, the test * * *." Saddler v. United States, *supra*, 287 F.2d at 413, 152 Ct.Cl. at 561; *see* Aragona Constr. Co. v. United States, *supra*, 165 Ct.Cl. at 390; J. D. Hedin Constr. Co. v. United States, *supra*, 347 F.2d at 257–258, 171 Ct.Cl. at 106.

Under these general standards, there is surely adequate warrant for inquiring whether the modifications made by the defendant in the M3A1 generator resulted in a cardinal change. We have already quoted the ASBCA's major description of these changes in its findings of fact. At the end of its opinion, the Board said in the same vein: "In view of the large number of changes that were made it may well be that another form of contract might have proved to be more appropriate; for example, a price redetermination contract or a cost-plus-a-fixed-fee contract." These statements by the only tribunal which has thus far considered the extent of the changes reveal, by themselves, that the claim of a cardinal change is very substantial and far from frivolous—whether or not it turns out to be vindicated in the end. Plaintiff is not embarked on a mere fishing expedition.

■ It is said, nevertheless, that there can be no trial or consideration of that issue in view of the administrative process made available by the contract and used by this contractor. One theory is that there cannot be a cardinal change if the agency is willing, as here, to con-

2. General Contracting & Constr. Co. v. United States, 84 Ct.Cl. 570 (1937); Stapleton Constr. Co. v. United States, 92 Ct.Cl. 551 (1940, 1941); Magoba Constr. Co. v. United States, 99 Ct.Cl. 662, 690 (1943); F. H. McGraw & Co. v. United States, 130 F.Supp. 394, 397, 131 Ct.Cl. 501, 506 (1955); Saddler v. United States, 287 F.2d 411, 413–415, 152 Ct.Cl. 557, 561, 564 (1961); Aragona Constr. Co. v. United States, 165 Ct.Cl. 382, 390–391 (1964); J. D. Hedin Constr. Co. v. United States, 347 F.2d 235, 257–258, 171 Ct.Cl. 70, 105–106 (1965); Wunderlich

Contracting Co. v. United States, 351 F. 2d 956, 965–966, 173 Ct.Cl. 180, 193–195 (1965); Tufano Contracting Corp. v. United States, 356 F.2d 535, 541, 174 Ct.Cl. 398, 407–408 (1966); Keco Indus., Inc. v. United States, 364 F.2d 838, 847–848, 176 Ct.Cl. 983, 998–999 (1966), *cert. denied*, 386 U.S. 958, 87 S.Ct. 1027, 18 L.Ed.2d 105 (1967); Luria Bros. & Co. v. United States, 369 F.2d 701, 707, 177 Ct.Cl. 676, 687 (1966). *See, also*, Freund v. United States, 260 U.S. 60, 62–63, 43 S.Ct. 70, 67 L.Ed. 131 (1922).

sider an equitable adjustment under the Changes clause. That position has no historical support in our treatment of the problem, and United States v. Carlo Bianchi & Company, *supra,* 373 U.S. 709, 83 S.Ct. 1409, 10 L.Ed.2d 652, as well as its descendants, do not suggest that agency tribunals should now have jurisdiction beyond the specific contract provisions giving them authority; on the contrary, United States v. Utah Construction & Mining Co., 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966), expressly recognizes the large areas in which the Boards have no power.

This theory suffers, moreover, from the logical difficulty that it allows the Board or other agency tribunal to create jurisdiction for itself where none exists under the traditional exception for a "cardinal" change. Administrative power flows (in this instance) from the Changes clause; that provision expressly limits modifications to those "within the general scope of this contract", and impliedly excepts alterations which transform the nature of the work to be done or the item to be furnished. The agency's willingness to go into the excluded area cannot enlarge its authority and should not be permitted to force a contractor to seek administrative relief for an injury which is outside the contract and for which he has a right to a judicial decision.[3]

A related but separate hypothesis— stressed by the defendant—is that this particular plaintiff estopped itself by seeking an equitable adjustment. This is an instance of an imposed election of remedies which seems to us unfair to contractors. One who was confident that Government modifications created a cardinal change, for which he could go to court at once, would still be well advised to pursue his administrative remedy under the Changes clause. If he failed to

do so and the court decided that the alterations were not cardinal but within the clause, the contractor could well be left without any remedy at all—though it was clear that he was entitled to some compensation on one basis or the other. The court would refuse recovery because there was no cardinal change and the plaintiff had not exhausted the administrative process under the Changes article; the Board would reject relief because no timely appeal had been taken to it.

In comparable contexts this court has already recognized this predicament and the pressure it exerts on contractors to pursue the administrative process. We said in Morrison-Knudsen Company v. United States, 345 F.2d 833, 838, 170 Ct. Cl. 757, 764 (1965): "Faced with the prospect of having their suits in court dismissed for failure to exhaust their administrative remedies, contractors often feel compelled to present all claims relating to the contract to the contracting officer, and on appeal to the appeals board". Recently we referred to "the potential dilemma of a contractor who administratively presents his claim to protect his position even though he would prefer, and thinks he is entitled to, a judicial remedy. If he does not vigorously defend the applicability of the 'disputes' clause, the Government, as in this case, would have us hold that he failed to exhaust his administrative remedies. If he argues too hard for administrative jurisdiction, he is likely to be faced with an estoppel argument". Nager Electric Co. v. United States, 396 F.2d 977, 982, 184 Ct.Cl. 390, 400 (1968).

This very real dilemma for contractors impels us to hold that plaintiff did not estop itself, from now arguing for a cardinal change, by its invocation of the contract procedure. If it fails to prove to us that the modification was

---

3. Presumably a contractor who by-passed the administrative procedures and brought suit directly, asserting a cardinal change, would have to convince the court that the Board would not hear his case under the Changes article. The difficulty of making this showing would compel most (or all) such contractors to go first to the Board. The exception for cardinal changes would thus be effectively eliminated and the "changes" procedure would become all-inclusive.

of this magnitude, it can still fall back on Wunderlich Act review of the Board's determination under the Changes clause. But if it had skirted the Board and come here directly, an adverse decision on the cardinal-change point would have left it without any possibility of relief.

Some might say that Air-A-Plane should have at least given warning that it deemed the modifications to be cardinal and that it was merely exhausting the administrative remedies in order to protect itself. We cannot see how such a statement would have been helpful, and it could possibly have been dangerous for plaintiff. The defendant might have argued later, in court, that plaintiff did not really pursue the administrative process since it questioned the Board's power. *See* Nager Electric Co. v. United States, *supra*, 396 F.2d at 982, 184 Ct.Cl. at 400. On the other hand, even if the plaintiff had given the warning, the Board would still have had to decide whether the changes came within the article and, if so, the proper equitable adjustment. Perhaps the Board, spurred by the contractor's disclaimer, would have *sua sponte* examined its jurisdiction more closely and decided that it had no power in these circumstances. This seems unlikely and too thin a possibility for finding an estoppel. We must remember, too, that the Board appeal was heard well before United States v. Carlo Bianchi & Company, *supra*, 373 U.S. 709, 83 S.Ct. 1409, and undoubtedly the tribunal, the plaintiff, and the Government all believed that in any event plaintiff would have a *de novo* trial in this court even on the issues arising "under the contract".

In those circumstances, there was little reason for plaintiff to tell the Board that it would insist on a *de novo* trial here on the question of cardinal change.

We are not barred by any of our decisions from holding plaintiff free from estoppel. The best case for the defendant is H. R. Henderson & Company v. United States, 169 Ct.Cl. 228, 240–241, 245 (1965), in which a contractor, arguing that his claim was for a breach rather than "under the contract", was held "estopped from denying that the factual determinations made by the administrative agency are within the scope of the 'Disputes' provision of the contract and the related provision of the Wunderlich Act". That holding was made "under the circumstances of this particular case", *i. e.*, an especially long and complex series of administrative appeals and determinations, taken together with a claim for a full *de novo* trial of the very same factual issues bearing on liability which had already been canvassed at length. Whatever the current standing of *Henderson* on the estoppel point,[4] it does not control the present case in which the question of a cardinal change has never been considered or tried. The other decisions invoked by the defendant are much farther afield.[5]

■ The result, in our view, is that plaintiff now has a right to try out its claim that the Government imposed a cardinal change upon it. Determination of that issue cannot be confined to the administrative record (unless the parties so agree) for the issue was never tried before the Board and the Government,

---

4. Under the later ruling in Morrison-Knudsen Company v. United States, *supra*, 345 F.2d 833, 170 Ct.Cl. 757 (1965), the *Henderson* plaintiff would probably have been confined to his remedy "under the contract", without need to consider the defense of estoppel. *See* Turnbull, Inc. v. United States, 389 F.2d 1007, 1012, 180 Ct.Cl. 1010, 1020–1021 (1967). Moreover, in Universal Ecsco Corp. v. United States, 345 F.2d 586, 589, 170 Ct.Cl. 809, 813 (1965)—after the *Henderson* decision —this court said that "we do not decide whether or not estoppel ever lies" against

a contractor who proceeds through the administrative process. Since it was rendered, *Henderson* has not been applied by the court with respect to estoppel.

5. Turnbull, Inc. v. United States, *supra* note 4, and Fort Sill Associates v. United States, 183 Ct.Cl. 301, 308 (1968), did not go off on estoppel. Nager Electric Company v. United States, *supra*, 396 F.2d 977, 184 Ct.Cl. 390, involved estoppel against the Government, not the contractor; the court pointed out that the defendant was not in the same quandary as the plaintiff.

particularly, has the right to present evidence showing that the modification was not cardinal. Ordinary notions of due process forbid the defendant from being limited, without its consent,[6] to the record of a proceeding in which the issue now to be decided was not directly involved and in which the Government had no notice that such a question was being tried. Though the degree of the changes was before the Board to a considerable extent, in connection with the determination of an equitable adjustment, neither party could or would be expected to put in all its evidence bearing on the separate and broader question of whether a cardinal change had occurred.

Accordingly, a court trial must now be had to determine whether the Government's modifications in the smoke generator amounted to a deviation beyond the coverage of the Changes clause. It is regrettable that this additional trial must come after the ASBCA has had an extended hearing on the amount of the equitable adjustment under the Changes article and has rendered a determination on that issue—a determination which may ultimately be superseded. But this is a problem which inheres in the current division between the "breach" area and the area of issues arising "under the contract". Cf. United States v. Utah Constr. & Mining Co., *supra*, 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 652. "In the circumstances, our task is to make the best of a difficult situation." Morrison-Knudsen Co. v. United States, *supra*, 345 F.2d at 838, 170 Ct.Cl. at 764. As already indicated, we see no proper solution, preserving to the parties their rights, other than to allow them now to try out the question of cardinal change which has not yet been considered or decided by any tribunal, and as to which the full facts and evidence may not yet have been presented.[7]

Further delay and repetition can, however, be reduced without trenching on rights. For one thing, the parties would be well advised to agree to incorporate the evidence in the Board record bearing on the extent and nature of the changes made by the Government (unless there is some good reason why one or another aspect of that evidence should not be put into the court record). The administrative proceeding was not, as we have pointed out, directed to the issue of cardinal change, but its record contains relevant material which led the Board to the conclusions we have earlier quoted in this opinion. As we see it now, it would be wasteful to re-do that testimony and to re-authenticate the documentary exhibits; problems of admissibility can be handled by the trial commissioner without having a repeat performance. Additional evidence can be received but, as we are now advised, it would serve no purpose to parrot evidence already given before the Board.[8] Perhaps, too, stipulations can help to bring this old case to a speedier ending.

Second, we think that the Government is bound by the Board's factual findings as to the scope and nature of the changes—some of which we have quoted above—so far as those

---

6. The proceedings in this court show that the defendant has thus far not agreed that the issue of a cardinal change (or of misrepresentation or reformation) is to be decided on the basis of the administrative record.

7. In 1963 the plaintiff sought a *de novo* trial but this was refused by the trial commissioner and the court. What we do today is in no way inconsistent with our ruling at that time. Plaintiff's earlier application was only for a *de novo* trial on Count 1 of the petition, challenging the validity of the Board decision under the Wunderlich Act, and the court's denial was only with respect to "a *de novo* trial on Count 1". Today we authorize a trial on Counts 2 and 3 of the petition (pertaining to cardinal change and misrepresentation).

8. It may be that the parties will desire to offer very little evidence beyond that before the Board, but they should, of course, have this opportunity if they wish.

factual findings go.[9] We have held earlier in this opinion that plaintiff is not estopped, by asking for relief "under the contract" for the changes made by the Government, from now urging that those changes were cardinal. The reason for this holding is that the contractor, even though entitled to and desirous of a judicial determination of that question, must resort to the administrative remedy to protect himself against the risk of losing all remedies. But the Government is in a different position; it does not hazard a forfeit of all rights. If improbably it thinks the change cardinal and asks the Board to dismiss for lack of jurisdiction, the most that happens to the Government, if the court disagrees, is that there will be a court (rather than an administrative) trial of the equitable adjustment under the Changes article. Nager Electric Co. v. United States, *supra,* 396 F.2d 977, 184 Ct.Cl. 390. Unlike the contractor, the Government does not lose all. On the other hand, if the defendant proceeds, as here, with the administrative hearing, presumably it makes the best case it can on all phases of the "Changes" problem before the Board. Furthermore, unlike the contractor, the Government has no special "right" to a judicial decision of matters bearing on a charge of cardinal change. That limitation in the Changes article is primarily for the contractors' benefit, not the Government's. The defendant has not reserved for itself the right to a judicial trial; that comes about because a cardinal change is a breach of contract for which the contractor can sue in the age-old way.

The Board's factual findings on the nature and scope of the changes were not gratuitous but were connected with a determination of the amount of compensation, an issue which the Government was wholeheartedly contesting. We see no adequate reason, therefore, why the Government should not be estopped from disputing those particular factual findings.[10] On relevant matters beyond (or not covered by) the findings, the defendant will have the right to produce evidence. *Cf.* United States v. Utah Constr. & Mining Co., *supra,* 384 U.S. 394, 86 S.Ct. 1545.

▮ In the judicial proceedings on the problem of cardinal change, the standards should be those already established by the court (discussed *supra*). In applying these criteria, the parties should offer evidence on and the commissioner should find (so far as practicable) the number of changes, the number of parts of the smoke generator, the parts changed and those left unchanged, the effect of the changes on the unchanged parts, the character of the changes, the timing of the changes, and the extent of the engineering, research, and development plaintiff had to do.[11] In addition, the trial should go into damages even though the commissioner (or the court) may ultimately conclude that there was no cardinal change and therefore that the issue of amount must be dealt with as arising "under the contract"—to be decided on the Board record alone. One reason for trying damages along with cardinal change is that the cost of the changed item as compared to that of the original is a factor in deciding whether the modification is or is not cardinal.

---

9. The defendant has not challenged any of these findings as unsupported by substantial evidence but has in effect admitted that they are adequately supported. We do not decide in this case whether the Government can ever challenge adverse Board findings of fact as unsupported by substantial evidence or as otherwise deficient under the Wunderlich Act.

10. These days, the principle of mutuality is no longer a *sine qua non* for application of collateral estoppel or res judicata; much depends on the circumstances and the considerations relevant to the case. See Technograph Printed Circuits, Ltd. v. United States, 372 F.2d 969, 975–976, 178 Ct.Cl. 543, 551–554 (1967); Semmel, Collateral Estoppel, Mutuality and Joinder of Parties, 68 Colum.L.Rev. 1457 (1968).

11. This is not meant to be an exhaustive list.

Saddler v. United States, *supra,* 287 F.2d at 413–414, 152 Ct.Cl. at 561–563; Wunderlich Contracting Co. v. United States, *supra,* 351 F.2d at 966, 173 Ct.Cl. at 194–195; Tufano Contracting Corp. v. United States, *supra,* 356 F.2d at 541, 174 Ct.Cl. at 408. Another reason is to eliminate further delay and another trial if a cardinal change is found. With respect to damages, as with liability, we hope that there will be a minimum of repetition of the testimony before the Board, although undoubtedly there will be some new evidence.

 *Misrepresentation and reformation:* Air-A-Plane also asserts claims for misrepresentation and reformation (see note 1, *supra*) which were not, and could not be before the Board.[12] For the same reasons (and with the same conditions) as those just given with respect to cardinal change, we hold that plaintiff is also entitled to a court trial on those issues. An additional problem as to misrepresentation will emerge if that cause of action is upheld while the charge of cardinal change is rejected. The court will then be faced with deciding, on the record to be made, whether the misrepresentation claim is separate from, and not subsumed under, the claim for an equitable adjustment within the Changes article. *See* J. A. Terteling & Sons, Inc. v. United States, 390 F.2d 926, 927, 182 Ct.Cl. 691, 694 (1968).[13] But that question can be put off for later consideration, if it should arise.

Our conclusion is that plaintiff is entitled to a trial on Counts 2 and 3 of its amended petition, in accordance with this opinion. The case is remanded to the trial commissioner for that purpose. Further consideration of Count 1 of the amended petition is postponed until the disposition of Counts 2 and 3.

---

12. At the end of its opinion, the Board specifically points out that it cannot reform the contract.

13. *Terteling* indicates that a misrepresentation claim may or may not survive a "changes" claim, depending on the facts.