**CRAY RESEARCH, INC., Plaintiff,**

v.

**DEPARTMENT OF the NAVY, et al., Defendants.**

Civ. A. No. 82–2512.

United States District Court, District of Columbia.

Oct. 6, 1982.

William E. Colby, David G. Hanes, John D. McGrane, Washington, D.C., for plaintiff.

Scott Kragie, Asst. U.S. Atty., Washington, D.C., for defendants.

## MEMORANDUM

GESELL, District Judge.

This case involves a challenge to the procurement of a computer to be used for analysis and prediction of weather conditions worldwide by the United States Department of the Navy ("Navy"). After competitive bidding, in which plaintiff Cray Research, Inc. ("Cray") competed but lost, the contract to supply the computer was awarded to Control Data Corporation ("CDC") as the lowest bidder and an agreement between CDC and the Navy was signed on July 5, 1979. CDC delivered and installed a Cyber 203 model computer in December, 1980. The contract between CDC and Navy required that the computer pass four benchmark performance tests before it was finally accepted.[1] While the 203 passed three of the four performance tests in December, 1980, it proved unable to pass the fourth, Benchmark A, despite the Navy's granting of several extensions of the time in which Benchmark A was to be completed.

Performance of the contract was endangered. CDC offered to replace the central memory and central processing unit of the 203 with newer, more advanced Cyber 205 equipment of far greater value to the Navy at additional cost. That proposal was rejected by the Navy. On March 26, 1982, CDC submitted a proposal to replace the

1. Because successful performance of Benchmark A required CDC to develop extensive new software at considerable expense and commit- ment of time, the Navy agreed that the Benchmark A test could be run after the contract had been awarded and delivery completed.

203 with the newer 205 at no additional cost. That proposal was accepted, with the 205 to be delivered and installed in November of 1982.

Cray has developed an ability to compete effectively for a procurement calling for a computer with Cyber 205 characteristics and claims the substitution of the 205 for the 203 constitutes an invalid sole-source procurement. It has filed a protest with the General Accounting Office ("GAO"), claiming that a major systems upgrade has occurred three years after the contract was let and that the Cyber 205 is a more advanced system for a more advanced purpose. The decision of the GAO is still pending. Meantime, Cray is before this Court on a motion for a preliminary injunction to prevent installation of the Cyber 205 until the GAO's decision is available. Under the standards governing injunctive relief in government procurement cases, Cray's request for a preliminary injunction must be denied.

■ Cray claims that if the 205 is installed Cray will be irreparably injured by loss of a major sale and the future business such a sale might engender, because after a procurement contract has been performed, a disappointed bidder's only relief may be legal damages. But disappointed bidders seeking injunctive intervention in the procurement process must show more than the possibility of irreparable injury. They must show that contracting officials have taken action which is irrational or contravenes statutory limitations on the agency's authority or the agency's own regulations. "Only when the court concludes that there has been a clear violation of duty by the procurement officials should it intervene in the procurement process.... [C]ourts should be reluctant to intervene absent a clear showing of illegality by the party attempting to overturn the agency determination." *M. Steinthal & Co. v. Seamans,* 455 F.2d 1289, 1303 (D.C.Cir.1971).

Cray has failed by a considerable margin to make such a clear showing. Cray makes no challenge to the original bid process, but rather suggests that the replacement of the

203 with the 205 is such a "cardinal change" in the provisions of the original contract as to constitute, in effect, a completely new sole source procurement in violation of the competitive bid process. Cray relies on the improved technology of the 205 as grounds for its contention that the contract between CDC and the Navy has been so modified as to become a new contract altogether.

It is undisputed, however, that even with the substitution of the 205 equipment both the specifications and the price of the original contract between the Navy and CDC remain unaltered. The original contract never required CDC to provide the 203 model; it simply required CDC to provide a model meeting certain performance requirements. If the 205 not only meets, but exceeds, those performance requirements, the Navy has done no more than accept the windfall CDC has offered. Such action does not constitute the clear showing of illegality necessary to justify judicial intervention in the procurement process.

■ The "cardinal change" doctrine prevents government agencies from circumventing the competitive procurement process by adopting drastic modifications beyond the original scope of a contract. The basic standard is whether the modified contract calls for essentially the same performance as that required by the contract when originally awarded so that the modification does not materially change the field of competition. *Webcraft Packaging, Division of Beatrice Foods Co.,* B–194086, 79–2 CPD ¶ 120 (Aug. 14, 1979). *Air-A-Plane Corp. v. United States,* 408 F.2d 1030, 1033 (Ct.Cl. 1969). Necessarily this must be resolved on a case-by-case basis.

■ In this case, the only "change" that has occurred in the contract is that CDC has elected to replace equipment which failed to meet performance tests with equipment that does meet those specifications, rather than default. None of the cases cited by Cray stretch the cardinal change doctrine to bar this result. Those cases all appear to deal with circumstances in which the procuring agency has either altered its demand

specifications during contract performance, or adjusted price or payment terms after the contract was awarded, and thus are not squarely on point. *See, e.g., Memorex Corp.,* B–200722, 81–2 CPD ¶ 334 (October 23, 1981) (change of contract from purchase to lease-to-ownership plan is cardinal change requiring competitive procurement); *U.S. Financial Services, Inc.,* B–197082, 81–2 CPD ¶ 104 (August 7, 1981) (renewal of lease requires competitive process); *Webcraft Packaging, Division of Beatrice Foods Co.,* B–194087, 79–2 CPD ¶ 120 (August 14, 1979) (relaxation of contract specifications after award is cardinal change). When neither price nor specifications have been altered, the field of competition cannot have materially changed.[2]

Cray also suggests that the Navy itself believes use of the 205 to be a cardinal change because Navy officials had represented at one point that replacement of the 203 central memory and central processing unit should be done on a competitive basis. The alleged statements do not support Cray's argument because the statements, whatever their binding effect, were made *before* CDC offered the 205 to the Navy at no additional cost. Navy statements questioning the legality of a modification resulting in change in contract terms have no relevance to a proposed modification that does not involve such changes.

Even if Cray had made a clear showing of illegality, injunctive relief would still be inappropriate in this case because the Navy has shown that a delay in the installation of the Cyber 205 is contrary to the public interest in a strong national defense. *M. Steinthal, supra* at 1302; *Sun Ship, Inc. v. Hidalgo,* 484 F.Supp. 1356, 1360 (D.D.C. 1980). The Cyber 205 is intended to be used to supply weather data and predictions that can ensure the safety of personnel and equipment involved in operations and improve weapons and sensor systems performance. The Cyber 203 is currently performing some of those functions but has proven unable to perform all the functions contracted for and in general operates in a far more limited manner than desired. While it is true that both the Navy and CDC have contributed to the existing delay in the installation of the 205, that does not change the fact that continued delays in the installation of the 205 threaten national defense by limiting weather forecasting ability to less-than-optimal levels. That threat will increase during the winter months as weather conditions worsen in the Northern Hemisphere, where the majority of the Navy's operational forces are located.

Moreover, during the time that the 203 is being dismantled and replaced by the 205, neither computer will be operational. If installation of the 205 takes place in November, as planned, the Navy will have excess computer capacity that can be utilized to minimize the loss of weather prediction capabilities during that period. That

---

2. Although Cray appears to rely primarily upon the cardinal change doctrine in its discussion of the merits, it makes two other arguments as well. Neither has merit.

First, Cray complains of the delays that have unquestionably occurred in the procurement and installation of the Cyber 203 and 205. It should be noted that at least some of the delay was due to the Navy's failure to complete construction of a facility to house the computer. As to delays experienced due to CDC's inability fully to perform the terms of the contract, there is some question whether Cray even has standing to challenge the on-going performance of the contract. *Gull Airborne Instruments, Inc. v. Weinberger,* C.A. No. 81–0464 (D.D.C. Oct. 16, 1981), *appeal pending,* 694 F.2d 838. More importantly, such delays are clearly insufficient to meet the test of showing a clear violation of law, *M. Steinthal, supra.*

Second, Cray claims that the installation of the 205 central memory and processing center is a violation of law or regulations because it is contrary to provision L.13.10 in the contract between CDC and the Navy. The provision in question reads as follows:

Equipment Substitutions and Additions.

a. The Government may replace any equipment components (other than the Central Processing Unit and Central Memory), covered by this contract with substitute equipment whether or not such substitute equipment is obtained from or manufactured by the contractor.

That provision on its face does not prohibit a substitution under these circumstances, that is, a substitution at the suggestion of CDC, of equipment also manufactured by CDC. Again, Cray has failed to show a clear violation of law.

excess computer capacity will not be available after the imminent launch of a new weather satellite. Although the exact date of the satellite launch is classified data, after that date installation of the 205 will pose greater risk than it does currently. Again, the severity of that risk is increased by impending winter weather.

The foregoing constitutes the Court's findings of fact and conclusions of law. Nothing in the foregoing is intended to resolve any of the issues now before the GAO or to interfere with its responsibility to develop uniform procurement standards.

Plaintiff's motion for a preliminary injunction is denied and since no other relief would be appropriate, the complaint is dismissed.