**ATLANTIC DRY DOCK CORPORATION,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

No. 87–974–Civ–J–12.

United States District Court,
M.D. Florida,
Jacksonville Division.

Sept. 3, 1991.

Michael D. Whalen and C. Warren Tripp, Jr., Bedell, Dittmar, DeVault & Pillans, Jacksonville, Fla., for plaintiff.

J. Christopher Kohn, Robert M. Hollis, Douglas J. Hughes and Theodore R. Carter, III, U.S. Dept. of Justice, Washington, D.C., for defendant.

## OPINION AND ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT AND ON MOTION TO DISMISS COUNT THREE

MELTON, Senior District Judge.

This cause is before the Court on two motions filed by defendant: (1) Motion for Partial Summary Judgment, filed on March 20, 1990, and (2) Motion to Dismiss Count Three of Plaintiff's Amended Complaint, filed on May 10, 1990. Plaintiff filed a response to the first motion on April 30, 1990, and defendant filed a reply to the response on May 10, 1990. Plaintiff filed a response to the second motion on May 29, 1990, and defendant filed a reply to that response on July 13, 1990. The Court heard oral argument on both motions on September 19, 1990. Defendant filed a Notice of Supplemental Authority on October 2, 1990, to which plaintiff responded on October 3, 1990. Defendant filed a Second Notice of Supplemental Authority on July 23, 1991, to which no response has been filed.

After careful consideration of the memoranda and oral argument of the parties, and having reviewed the entire file and relevant law, the Court is of the opinion that the motion for partial summary judgment should be granted as to Count One and denied as to Count Two and that the motion to dismiss Count Three should be granted. Below, the Court first reviews the facts of the case which are relevant to its disposition of the motions and then discusses the merits of each motion separately.

### I. Facts

In August, 1969, the parties entered into a contract (the "Master Agreement") which authorized plaintiff to bid on future job orders offered by defendant. In September, 1984, pursuant to the Master Agreement and a subsequent bid, plaintiff contracted with defendant to overhaul two Coast Guard ships, the USCGC Ute and the USCGC Lipan. The total price of the contract was set at $5,809,073.00. In the course of the overhaul work, the parties entered into approximately 130 agreements to modify the contract. These modifications encompassed additions to, deletions from, or revisions of the plans and specifications of the work to be performed under the original contract.

Each modification agreement was memorialized on a preprinted government form, Standard Form 30, entitled "Amendment of Solicitation/Modification of Contract". In addition to the preprinted provisions on the form, each modification contained additional provisions specially added to the form. One of the added provisions is a settlement or release provision which reads, in full, as follows:

> The change in price and/or delivery date described above, is considered to be fair and reasonable and has been mutually agreed upon in full and final settlement of all claims arising out of this modification including all claims for delays and disruptions resulting from, caused by, or incident to such modifications or change orders.

Each modification was a bilateral agreement, signed by a representative of plaintiff and by a representative of defendant.

The numerous modifications significantly delayed the completion date of the overhaul work and significantly increased the total contract price. The work on the USCGC Lipan originally was scheduled to be performed between October 8, 1984, and March 23, 1985, for a total of about five and one-half (5½) months of work. The many modifications caused the completion date to be pushed back to July 19, 1985, for a total of about nine and one-half (9½) months of work. The USCGC Ute was scheduled to be overhauled between February 8, 1985, and July 23, 1985, for a total of about five and one-half (5½) months of work. The modifications, however, mandated that the overhaul be conducted between June 10, 1985, and June 2, 1986, for a total of almost twelve (12) months of work. The contract price was increased by a total of $4,609,372.00 as a result of the modifications at issue in this action. Adding this amount to the original contract price of $5,809,073.00, defendant paid a total of $10,418,445.00 to plaintiff as compensation for the overhaul work as of the date of the filing of this action.

## II. Motion for Partial Summary Judgment on Counts One and Two

In Count One of the amended complaint, plaintiff asserts that "the cumulative effect of the many small changes" engendered by the contract modifications resulted in "cumulative delay and disruption." Plaintiff claims that it was not compensated for this cumulative delay and disruption and thus defendant breached the contract and damaged plaintiff. In Count Two, plaintiff asserts that the numerous modifications resulted in a "cardinal change" of the contract terms because defendant "required [plaintiff] to perform work not within the general scope of the contract which had the effect of fundamentally altering [plaintiff's] contractual undertaking." This cardinal change, plaintiff claims, constituted a breach of the contract for which damages are recoverable.

In its motion for partial summary judgment, defendant asserts that plaintiff was fully compensated for each modification and any claims plaintiff may have had for breach of contract arising out of the modifications were extinguished by the above-quoted release provision. Defendant contends that the release provision is either an unqualified release of defendant or an unrebuttable manifestation of an accord and satisfaction between the parties concerning all claims based on the modifications. Defendant's contention is grounded in its view that the provision is unambiguous and should be enforced as a matter of law to bar plaintiff's breach of contract claims.

In opposing defendant's motion, plaintiff argues that the release provision is ambiguous concerning whether the parties intended it to extinguish the claims plaintiff is asserting in this action; therefore, the provision cannot be enforced as a matter of law to bar these claims. Plaintiff maintains that the release provision contained in each modification merely evidences a settlement of discrete claims which are directly and causally connected to that individual modification only. These individual releases, plaintiff contends, were not intended to cover claims which arise from the cumulative impact of all of the modifications taken together. In plaintiff's view, material issues of fact exist concerning the parties' intent and the Court must look beyond the language of the release provision to determine that intent.

### The Standard for Ambiguity

Under federal maritime law, "a court may not look beyond the written language of [a contract] to determine the intent of the parties unless the disputed contract provision is ambiguous." *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 332–33 (5th Cir.1981) (Unit A). In *Orkin Exterminating Co. v. Federal Trade Commission*, 849 F.2d 1354, 1360 (11th Cir.1988), *cert. denied*, 488 U.S. 1041, 109 S.Ct. 865, 102 L.Ed.2d 989 (1989), the United States Court of Appeals for the Eleventh Circuit delineated the legal principles to be applied in determining whether a contract provision is ambiguous:

Under well-established principles of contract law, where the language of a contract is unambiguous, the legal effect of that language is a question of law. *Mason Drug Co., Inc. v. Harris*, 597 F.2d 886 (5th Cir.1979). Because the question of whether a contractual ambiguity exists is also a question of law, it "may be resolved summarily." C. Wright, A. Miller & M. Kane, 10A *Federal Practice and Procedure*, § 2730.1 at 279 (1983) (citing *Freeman v. Continental Gin Co.*, 381 F.2d 459 (5th Cir.1967) (other citations omitted). A contract term is ambiguous if "reasonably susceptible to more than one interpretation." *Fabrica Italiana Lavorazione Materie Organiche, S.A.S. v. Kaiser Aluminum & Chemical Corp.*, 684 F.2d 776, 780 (11th Cir.1982). But "[a]n ambiguity in a contract cannot be created by the mere assertion of a party to it." The fact that the meaning of a contract term is disputed likewise reveals no ambiguity. *Vreeland v. Federal Power Comm'n*, 528 F.2d 1343, 1351 (5th Cir.1976).

In its examination of a disputed contract provision, a court must examine the disputed terms "in the context of the entire agreement, giving the words their plain and ordinary meaning as understood by a reasonable person." *International Bhd. of Boilermakers v. Local Lodge D111 of the Cement, Lime, Gypsum and Allied Workers Div. of the Int'l Bhd. of Boilermakers*, 858 F.2d 1559, 1562 (11th Cir. 1988), *cert. denied*, 490 U.S. 1047, 109 S.Ct. 1955, 104 L.Ed.2d 424 (1989).

Thus, in the present case, to be able to determine the legal effect of the release provision as a matter of law, the Court must find that the release provision is unambiguous, that is, reasonably susceptible to only one interpretation. The Court will examine each of plaintiff's claims independently to determine if the release provision is unambiguous as applied to that claim and, if it is unambiguous, its legal effect on that claim.

*Cumulative Delay and Disruption*

■ As discussed above, plaintiff attempts to avoid the application of the release provision to the claim for delay and disruption by asserting that it is not seeking damages for the discrete delay and disruption caused by each modification individually; rather, "all [plaintiff] is seeking before this Court is that disruption which was caused by the combined effect of all the Modifications taken together." Plaintiff's Memorandum in Opposition to Defendant's Motion for Partial Summary Judgment, at 8 n. 2. The release provision contained in each modification includes a clause which clearly and specifically addresses delay and disruption, stating that the modification incorporates a final settlement of all claims arising out of each modification "including all claims for delays and disruptions resulting from, caused by, or incident to such modifications or change orders." A plain reading of this language convinces the Court that the only reasonable interpretation of the release provision is that it was intended to resolve all claims for damages caused by delay and disruption, whether cumulative or otherwise. Therefore, the provision is unambiguous and bars plaintiff's claim as a matter of law.

Examining the language of the release provision, the Court first notes that its terms are couched in the plural; the release is applicable to "delay*s* and disruption*s* resulting from, caused by, or incident to such modification*s* or change order*s*." This multiple use of the plural demonstrates that the provision bars not only claims for delay and disruption "internal" to that particular modification, but any claim for delay and disruption "resulting from, caused by, or incident to" that modification and others—including claims for cumulative delay and disruption.

Second, even if the terms were not plural, in light of the plain and ordinary meaning of the words used in the provision, it is clear that any cumulative delay and disruption "results from" or is "caused by" or is "incident to" the individual modifications. Plaintiff cannot assert that the modifications caused the cumulative delay and disruption and simultaneously assert that a release of all delay and disruption claims caused by each modification, a release in-

cluded in every modification upon which the claim is based, does not bar the claim. Applying plain logic to the clear and specific language of the release demonstrates that plaintiff's claim for cumulative delay and disruption is barred. Therefore, defendant's motion for partial summary judgment as to Count One will be granted.

### Cardinal Change

■ To explain its disposition of the motion as it relates to the cardinal change claim, the Court first must review the legal principles which are to be applied when such a claim is raised. The cardinal change doctrine is a creature of the body of law which has arisen in the context of disputes over government contracts.

> [A cardinal change] occurs when the government effects an alteration in the work so drastic that it effectively requires the contractor to perform duties materially different from those originally bargained for. By definition, then, a cardinal change is so profound that it is not redressable under the contract, and thus renders the government in breach.

*Allied Materials & Equip. Co. v. United States,* 569 F.2d 562, 563–64, 215 Ct.Cl. 406 (1978). The purpose of the cardinal change doctrine "is to provide a breach remedy for contractors who are directed by the Government to perform work which is not within the general scope of the contract," in other words, work which "fundamentally alters the contractual undertaking of the contractor...." *Edward R. Marden Corp. v. United States,* 442 F.2d 364, 369, 194 Ct.Cl. 799 (1971).

> [T]here is no automatic or easy formula which can be used to determine whether a change (or changes) is beyond the scope of the contract and, therefore, in breach of it. "Each case must be analyzed on its own facts and in light of its own circumstances, giving just consideration to the magnitude and quality of the changes ordered and their cumulative effect upon the project as a whole."

*Id.* (quoting *Wunderlich Contracting Co. v. United States,* 351 F.2d 956, 966, 173 Ct.Cl. 180 (1965)). "In making this determination, the court is to look at all relevant circumstances, including, but certainly not limited to, the increase in cost of completing the contract and the number of changes made." *In re Boston Shipyard Corp.,* 886 F.2d 451, 456–57 (1st Cir.1989) (citing *Air–A–Plane Corp. v. United States,* 408 F.2d 1030, 1033, 187 Ct.Cl. 269 (1969)).

> The basic standard ... is whether the modified job "was essentially the same work as the parties bargained for when the contract was awarded. Plaintiff has no right to complain if the project it ultimately constructed was essentially the same as the one it contracted to construct." Conversely, there is a cardinal change if the ordered deviations "altered the nature of the thing to be constructed."

*Air–A–Plane,* 408 F.2d at 1033 (quoting *Aragona Constr. Co. v. United States,* 165 Ct.Cl. 382, 391 (1964)).

Unlike the delay and disruption claim, to which a specific clause of the release provision is directed, no part of the provision specifically addresses cardinal change. Thus, the Court cannot infer an intent to release the cardinal change claim from any direct reference to it in the release provision. Instead, the Court must look to the general language of the provision to determine whether that language is unambiguous as applied to the cardinal change claim. The Court repeats that general language here:

> The change in price and/or delivery date described above, is considered to be fair and reasonable and has been mutually agreed upon in full and final settlement of all claims arising out of this modification....

In light of the legal principles governing cardinal change claims, and in light of the standard for ambiguity, the Court finds that the release provision is reasonably susceptible to more than one interpretation as applied to the cardinal change claim. Therefore, the provision is ambiguous as applied to that claim and may not be enforced as a matter of law to bar it.

As noted above, determining the merits of a cardinal change claim requires an examination of the totality of the circum-

stances surrounding the project and the many modifications. One court has noted that two of the relevant circumstances are the increase in the cost of completing the project and the number of changes made. *See In re Boston Shipyard,* 886 F.2d at 456–57. These facts cannot be known until the project is completed or nearly completed. Neither can it be known until completion or near completion whether "the project [plaintiff] ultimately constructed was essentially the same as the one [plaintiff] contracted to construct." *See Air–A–Plane,* 408 F.2d at 1033.

Given these relevant circumstances, the Court cannot conclude that the only reasonable interpretation of the release provision contained in each modification is that it was intended to bar a claim of cardinal change based upon the outcome of the project as a whole. The general language of the provision is applicable on its face only to claims arising out of the particular modification in which the provision is contained. The Court cannot infer from that language an intent by plaintiff to settle a claim which, by its nature, cannot be known until the project is completed or nearly completed.[1] Therefore, defendant's motion for partial summary judgment as to Count Two will be denied.[2]

---

**1.** The Court recognizes that both the cumulative delay and disruption claim and the cardinal change claim are cumulative in nature, that is, they do not depend upon the effect of any particular modification but rather depend upon the cumulative effect of all of the modifications taken together. Given this identity of the grounds underlying each claim, plaintiff may argue that if summary judgment is denied as to Count Two, summary judgment should be denied as to Count One as well. But the Court's task in determining the merits of defendant's motion was to determine whether the release provision was unambiguous as applied to each count individually. The specific clause concerning delay and disruption contained in the release provision resolved what may otherwise have been an ambiguity concerning the application of the provision to the delay and disruption claim. The absence of any such specific clause concerning cardinal change claims makes a legal difference and results in an ambiguity concerning the application of the provision to the cardinal change claim.

**2.** In its reply to plaintiff's response to the motion for partial summary judgment, defendant raises an additional ground for summary judg-

## III. Motion to Dismiss Count Three

■ In Count Three of the amended complaint, plaintiff asserts a claim based on the tort of misrepresentation. Plaintiff alleges that it relied on misrepresentations by the government concerning the plans and specifications for the overhaul work in bidding for and performing that work and that its reliance on these misrepresentations caused it damage. In its motion to dismiss Count Three, defendant raises three grounds for dismissal: (1) plaintiff has not alleged a "maritime tort" and therefore this Court lacks subject matter jurisdiction over that part of the action, (2) the claim is barred by the applicable statute of limitations, and (3) the claim is barred by accord and satisfaction, release, and waiver. Because the Court is of the opinion that Count Three should be dismissed on the basis of the first ground, the Court will not address the second and third grounds.

In *Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), the Supreme Court established a two-pronged test for determining whether federal jurisdiction lies when a tort claim is brought in federal court pursuant to the admiralty jurisdiction conferred

---

ment as to Count Two which was not raised in the motion or its accompanying memorandum. Defendant argues that because plaintiff failed to present its cardinal change claim to the government's contracting officer this Court lacks subject matter jurisdiction over that claim. Because this argument was not raised in defendant's motion or initial memorandum, plaintiff has not had the opportunity to respond formally to the argument and the Court has not considered it in determining the merits of the motion.

Defendant's assertion, however, raises serious issues concerning this Court's jurisdiction over the claim, issues which should be resolved before trial. Accordingly, the Court will order defendant to file an appropriate motion addressing the jurisdictional argument within thirty (30) days from this date. Plaintiff shall respond to the motion within twenty (20) days from the date it is served. After the jurisdictional issues are resolved, if the case survives the motion, the Court will take the necessary steps to place this action on a track for trial of the cardinal change claim.

in 28 U.S.C. § 1333 (1988). *"Executive Jet* teaches that the court's admiralty jurisdiction will attach in tort cases if the alleged wrong occurs on navigable waters (situs) *and* bears a significant relationship to traditional maritime activity (nexus)." *Kuehne & Nagel (AG & Co.) v. Geosource, Inc.,* 874 F.2d 283, 288 (5th Cir.1989) (emphasis in original). The situs requirement is met by showing that the alleged tortious conduct had a direct effect on navigable waters. *Id.* at 289. For the reasons stated below, the Court finds that the misrepresentation claim in the present case does not meet the situs requirement. Thus, even if the claim meets the nexus requirement, it must be dismissed.

In *Kuehne & Nagel, supra,* the United States Court of Appeals for the Fifth Circuit considered whether fraudulent inducement to contract was a maritime tort cognizable in admiralty. The district court in that case had concluded that the allegation constituted a maritime tort because "the intentional tort was so interwoven with a maritime contractual relationship (at least in part) as to fall within admiralty jurisdiction." *Kuehne & Nagel (AG & Co.) v. Geosource, Inc.,* 625 F.Supp. 794, 799 n. 6 (S.D.Tex.1986). The Fifth Circuit disagreed. The court stated that "[a] party to a contract with strong maritime implications still must satisfy *Executive Jet*'s situs requirement when seeking to predicate jurisdiction on a maritime tort." *Kuehne & Nagel,* 874 F.2d at 289. The court found that the fraudulent inducement claim did not meet the situs requirement.

In reaching its conclusion, the Fifth Circuit relied primarily on one of its own precedents, *Wiedemann & Fransen, A.P.L.C. v. Hollywood Marine, Inc.,* 811 F.2d 864 (5th Cir.), *cert. denied,* 484 U.S. 846, 108 S.Ct. 142, 98 L.Ed.2d 99 (1987). That case "teaches that interference with a maritime contract does not vest the court with admiralty tort jurisdiction absent an impact on navigable waters." *Kuehne & Nagel,* 874 F.2d at 289–90. In light of

*Wiedemann,* the *Kuehne & Nagel* court reasoned that "[i]t follows that inducement to enter a contract with maritime consequences does not bestow admiralty jurisdiction unless the situs requirement is met." *Id.* at 290. The court found that the situs requirement had not been met because the alleged misrepresentations had their effect on land when they prompted plaintiff to sign the contracts in question. *Id.* at 289. Thus, the district court did not have admiralty jurisdiction over the fraudulent inducement claim. *Id.* at 290.

*Kuehne & Nagel* and *Wiedemann* demonstrate that in the present case plaintiff's misrepresentation claim cannot meet the *Executive Jet* two-pronged test. Accepting the matters pleaded in the amended complaint as true, the Court cannot discern any allegation by plaintiff that the misrepresentations had a direct effect on navigable waters. At best, the misrepresentations had their effect at the dry dock where plaintiff overhauled the two ships, outside of navigable waters. Plaintiff makes no allegation that the misrepresentations had any direct effect aboard the ships after they were returned to navigable waters. Thus, the Court lacks subject matter jurisdiction over plaintiff's misrepresentation claim and Count Three of the amended complaint must be dismissed.

### IV. Conclusion

The Court having considered the memoranda and oral argument of the parties, the entire file and relevant law, and being otherwise fully advised, it is

ORDERED AND ADJUDGED:

1. That defendant's Motion for Partial Summary Judgment is granted as to Count One and denied as to Count Two of the amended complaint;

2. That defendant's Motion to Dismiss Count Three of Plaintiff's Amended Complaint is granted and Count Three is dismissed without prejudice;

3. That defendant shall file an appropriate motion with an accompanying memorandum addressing the jurisdictional issue discussed in footnote 2, above, within thirty (30) days from this date; and

4. That plaintiff shall respond to the jurisdictional motion within twenty (20) days from the date it is served.

DONE AND ORDERED.