Williams, Judge,
delivered the opinion of the court:
The plaintiff and the defendant, represented by L. H. Tripp, Chief of the Construction Division of the U. S. Veterans’ Bureau, entered into a contract on August 20, 1930, whereby plaintiff agreed to furnish all labor and materials, and perform all work required, for constructing and finishing complete, at U. S. Veterans’ Hospital, Somerset Hills, New Jersey, certain buildings, connecting corridors, and roads, walks, grading, and drainage in connection with these buildings, also plumbing, heating, and electrical work; outside sewers, water, steam, and electric distribution systems, and to provide a new water tube boiler and mechanical stoker in the present Boiler House, Building No. 14, for the consideration of $911,376.00. The work was to be performed in accordance with the specifications, schedules, and drawings furnished by the defendant, all of which were made a part of the contract.
On September 18,1930, plaintiff received a letter from the Acting Director of the Veterans’ Bureau stating that upon reconsideration it had been decided to omit from the pres-sent construction program the Nurses’ Quarters Building No. 17, together with the work pertaining to that building as described in Alternate (c) under Item I of plaintiff’s proposal, and advised plaintiff that a formal change order would be issued when the execution of the form of contract had been completed. On September 19 plaintiff was notified by the Chief, Construction Division, U. S. Veterans’ Bureau, to proceed with the construction of the buildings and utilities contemplated by the contract of August 20, 1930, excepting Nurses’ Quarters Building No. 17. Plaintiff was also notified at the same time that its surety bond had been approved and placed on file with the Bureau record of the contract.
*577 On January 13, 1931, the contracting officer issued a formal change order under Article 3 of the contract eliminating from the contract Nurses’ Quarters Building No. 17, and by reason of such change decreased the contract price by $99,520.00.
Plaintiff had previously, in acknowledging receipt of the defendant’s letter of September 19,1930, directing it to proceed with the work under the contract “excepting Nurses’ Quarters Building No. 17”, stated that the acknowledgment was made “without prejudice to any of the contractor’s rights by reason of the change.” Now, upon receipt of the formal change order omitting Building No. 17 from the contract and deducting $99,520.00 from the contract price by reason of such change, plaintiff, within the time in which it. was permitted to do so under Article 3 of the contract, protested the deduction of $99,520.00 from the contract price because of the omission of Building No. 17 and filed with its protest voluminous; proof tending to show that the deduction of that amount was excessive and inequitable, resulting in loss and damage to it, claim for which was made. The Director of the Veterans’ Bureau in acknowledging receipt pf plaintiff’s protest and claim for loss and damages sustained by it by reason of the change order stated: “Since the Bureau had issued a change order making a deduction of $99,520.00 which it considered an equitable adjustment of this matter as contemplated in Article 3 of the contract, any claim you desire to make in connection therewith is one properly for consideration by the General Accounting Office.”
Prior to the time plaintiff received notice on September 19, 1930, to proceed with the work under the contract, “excepting Nurses’ Quarters Building No. 17”, it had received from subcontractors prices for the furnishing of those items of materials necessary to the work not handled by itself. The unit prices for these materials proposed by the subcontractors were based on the amount of such materials required for the completion of the contract as a whole. Upon the elimination of Building No. 17 plaintiff took up with its subcontractors negotiations for contracts covering the materials required for the work, omitting Building No. 17, and found *578 that its subcontractors in the main would not enter into the contracts for the materials to be furnished by them at the unit prices quoted in their proposals. Plaintiff was therefore required to enter into contracts with its subcontractors for the materials to be furnished by them at higher prices than the unit prices offered by them for the materials necessary for the completion of the contract as a whole. The Commissioner of the court, to whom the case was referred for the taking of proof and reporting of facts, heard testimony offered by plaintiff in respect to the loss and damage sustained by it because of its inability to procure from subcontractors reduction of their proposed contract prices to an amount commensurate with the sum ($99,520.00) deducted by the Government from plaintiff’s contract because of the elimination of Building No. 17 and because of loss of profits and overhead. The Commissioner found and reported to the court that plaintiff had suffered damages to the extent of $20,773.00. The defendant offered no proof in respect to the alleged loss and damage caused plaintiff by the elimination of Building No. 17, and took no exceptions to the report of the Commissioner fixing the amount of such damage at $20,773.00. We find, upon a careful review of the evidence heard by the Commissioner of the court, that plaintiff’s loss as fixed by him is amply supported by the proof, and have made a finding of fact that because of the elimination of Building No. 17 from the contract plaintiff sustained loss and damage to the extent of $20,773.00.
The defendant does not challenge the finding that plaintiff has sustained loss and damage to the extent of $20,773.00 because of the elimination of Building No. 17, but rests its case entirely on the assumption that the elimination of Building No. 17 was a change in the drawings and specifications of the contract within the meaning of Article 3 of the contract, and that the decision of the Director of the Veterans’ Bureau that a deduction of $99,520.00 from the contract price, the amount fixed by the contracting officer in the change order, was an equitable adjustment of the matter, is final and conclusive under Article 15 of the contract.
Article 3 of the contract provides:
*579 Changes.-, — The contracting officer may at any time, by a written order, and without notice to the sureties, make changes in the drawings and (or) specifications of this contract and within the general scope thereof. If such changes cause an increase or decrease in the amount due under this contract, or in the time required for its performance, an equitable adjustment shall be made and the contract shall be modified in writing accordingly. No change involving an estimated increase or decrease of more than Five Hundred Dollars shall be ordered unless approved in writing by the head of the department or his duly authorized representative. Any claim for adjustment under this article must be asserted within ten days from the date the change is ordered, unless the contracting officer shall for proper cause extend such time, and if the parties can not agree upon the adjustment the dispute shall be determined as provided in Article 15 hereof. But nothing provided in this article shall excuse the contractor from proceeding with the prosecution of the work so changed.
Article 15 of the contract provides:
Disputes. — Except as otherwise specifically provided in this contract, all disputes concerning questions of fact arising under this contract shall be decided by the contracting officer or his duly authorized representative, subject to written appeal by the contractor within thirty days to the head of the department concerned, whose decision shall be final and conclusive upon the parties thereto as to such questions of fact. In the meantime the contractor shall diligently proceed with the work as directed.
Article 3 of the contract is a standard form used by the Government in all construction contracts. Its purpose is to enable the contracting officer to make any change in drawings and specifications he may find necessary or desirable as work under the contract progresses. It has reference, we think, entirely to structural changes like the substitution of one kind of material for another, changes in architectural design, the addition to or subtraction from work required by the specifications, etc. Certainly the authority vested in the contracting officer by this article of the contract to make “changes in the drawings and (or) specifications of this contract and within the general scope thereof” did not vest him *580 with authority to eliminate entirely from the contract Building No. 17. If he could eliminate one building from the contract under the guise of making changes in the drawings and specifications he could likewise eliminate two or any number of buildings and thus entirely change the contract. The elimination of Building No. 17 amounted to a cardinal change or alteration of the contract itself, a thing that could only be consummated with the consent of both parties to the contract. The elimination of Building No. 17 from the work to be performed under the contract without the consent of plaintiff was a plain breach of the contract by the defendant.
The defendant having breached the contract plaintiff is entitled to recover its damages arising therefrom, and judgment is therefore awarded plaintiff in the sum of $20,773.00.
It is so ordered.
Whaley, Judge; Littleton, Judge; Geeen, Judge; and Booth, Chief Justice, concur.